**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

*Attorney for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| CHARLIE MCDONALD and BENJAMIN KARTER, individually and on behalf of all others similarly situated and the general public,<br><br>Plaintiffs,<br><br><br>KIND, LLC,<br><br>Defendant. | Case No.:<br><br>CLASS ACTION<br><br>**COMPLAINT FOR:**<br><br>**1) BREACH OF EXPRESS WARRANTY;**<br><br>**2) BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY;**<br><br>**3) UNJUST ENRICHMENT;**<br><br>**4) INTENTIONAL MISREPRESENTATION;**<br><br>**5) NEGLIGENT MISREPRESENTATION;**<br><br>**6) VIOLATIONS OF VARIOUS CONSUMER FRAUD LAWS.**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiffs Charlie McDonald and Benjamin Karter ("Plaintiffs") by and through their attorneys of record, bring this action on behalf of themselves, all others similarly situated, and the general public, against Defendant KIND, LLC. ("Defendant" or "KIND").

## INTRODUCTION

1.     Defendant is the manufacturer and distributor of KIND bars that are falsely and deceptively labeled as being "healthy" and made with "All Natural" ingredients. This complaint concerns Defendant's "KIND Fruit & Nut Almond & Apricot," "KIND Fruit & Nut Almond & Coconut," "KIND Plus Peanut Butter Dark Chocolate + Protein," and "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" (collectively the "KIND Products").

2.     Defendant claims in a uniform manner on the KIND Products' labels that "KIND is a brand of delicious, all natural foods made from ingredients you can see & Pronounce. ® At KIND, we do things differently and try to avoid false compromises. Instead of '*or*' we say '*and*.' Healthy *and* tasty, convenient *and* wholesome, economically sustainable *and* socially impactful."  Furthermore, the front of the KIND Products' label prominently says "All Natural." However, the KIND products are neither "healthy" nor "all natural foods." Instead, the KIND Products contain unlawful levels of saturated fat and artificial ingredients such as soy lecithin, soy protein isolate, palm kernel oil, and vegetable glycerin.

3.     Defendant has engaged in a widespread marketing campaign to mislead consumers about the nature of the ingredients in its KIND Products.  Specifically, Defendant conveyed to consumers that the Products are "All Natural" and "healthy" even though Defendant knew that such statements were false and misleading.

4.     By deceiving consumers about the nature, quality, and/or ingredients of the Products as detailed herein, thereby distinguishing them from similar products, such as generic-brand nutritional bars, Defendant was able to command a premium price for the Products. Defendant was motivated to mislead consumers for no other

reason than to take away market share from competing products, thereby increasing its own sales and profits.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some members of the Class of Plaintiffs are citizens of states different than Defendant.  Further, greater than two-thirds of the Class members reside in states other than the state in which Defendant is incorporated or has tits principal place of business.

6.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because Plaintiffs are residents of California, Defendant maintains its principal place of business in New York, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendant (i) is authorized to conduct business in this district, (ii) has intentionally availed itself of the laws and markets within this district through its promotion, marketing, distribution and sale of its products in this district; (iii) does substantial business in this district; (iv) advertises to consumers residing in this district, and (v) is subject to personal jurisdiction in this district.

## THE PARTIES

9.     Plaintiff Charlie McDonald is a resident of Santa Ana, California who purchased Defendant's "KIND Fruit & Nut Almond & Apricot," "KIND Fruit & Nut Almond & Coconut," "KIND Plus Peanut Butter Dark Chocolate + Protein," and

"KIND Plus Dark Chocolate Cherry Cashew + Antioxidants." Plaintiff McDonald began purchasing the Products in or around the summer of 2013 and continued to buy the Products on about a weekly basis from Von's and Office Depot stores in or near Santa Ana, California until on or around April 5, 2015. Plaintiff McDonald paid approximately $2.00 for each KIND Product that he purchased.

10.    Plaintiff Ben Karter is a resident of Irvine, California who purchased Defendant's "KIND Fruit & Nut Almond & Apricot," "KIND Fruit & Nut Almond & Coconut," "KIND Plus Peanut Butter Dark Chocolate + Protein," and "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants." Plaintiff Krater began purchasing the Products in or around 2010 and continued to buy the Products on about a weekly basis from Sprouts and Starbucks stores in or near Irvine, California until on or around March of 2015. Plaintiff Krater paid approximately $2.00 for each KIND Product that he purchased.

11.    Defendant KIND, LLC is a Delaware Limited Liability Company headquartered at 8 West 38th Street, 6th Floor, New York, New York 10018. KIND is a manufacturer and distributor of whole nut and fruit bars and snacks targeted at health conscious consumers. The company was founded in 2004 and now sells its products throughout the United States and internationally.

## THE KIND PRODUCTS

### KIND Fruit & Nut Almond & Apricot

12.    Defendant advertises the "KIND Fruit & Nut Almond & Apricot" Product by putting false and misleading claims on the label, stating or suggesting that the Product is "All Natural," made from "natural ingredients," and is an "all natural food." Defendant further falsely claims that the Product is "healthy" and "wholesome" and further makes claims suggesting that the product may be useful in maintaining healthy dietary practices such as  "Good Source of Fiber," "No Trans Fat," "Very Low Sodium," and "low glycemic index."



13.    The ingredients in the "KIND Fruit & Nut Almond & Apricot" include "Almonds, coconut, honey, non GMO glucose, apricots, apple juice, crisp rice, vegetable glycerine, chicory root fiber, soy lecithin, citrus pectin, [and] natural apricot flavor."   Additionally, the serving size for one bar is "40 [grams] and the product contains "3.5 [grams of] saturated fat."

14.    Plaintiffs read and relied on each of the quoted statements above in paragraphs 12 through 13 that are found on the "KIND Fruit & Nut Almond & Apricot" packaging.

15.    Despite being advertised as "All Natural," the Product contains the artificial and synthetic ingredients vegetable glycerin, soy lecithin, non GMO glucose, and natural apricot flavor.  Moreover, the Product is not "healthy" because it contains unlawful levels of saturated fat.

16.    Plaintiffs would consider buying the Product again in future if it was advertised truthfully.

**KIND Fruit & Nut Almond & Coconut**

17.    Defendant advertises the "KIND Fruit & Nut Almond & Coconut" Product by putting false and misleading claims on the label, stating or suggesting that the Product is "All Natural," made from "natural ingredients," and is an "all natural food." Defendant further falsely claims that the Product is "healthy" and "wholesome" and further makes claims suggesting that the product may be useful in maintaining

healthy dietary practices such as  "Good Source of Fiber," "No Trans Fat," "Very Low Sodium" and "low glycemic index."



18.   The ingredients in the "KIND Fruit & Nut Almond & Coconut" include "Almonds, coconut, honey, non GMO glucose, crisp rice, chicory root fiber, [and] soy lecithin"  Additionally, the serving size for one bar is "40 [grams] and the product contains "5 [grams of] saturated fat."

19.   Plaintiffs read and relied on each of the quoted statements above in paragraphs 17 through 18 that are found on the "KIND Fruit & Nut Almond & Coconut" packaging.

20.   Despite being advertised as "All Natural," the Product contains the artificial and synthetic ingredients soy lecithin and non GMO glucose.  Moreover, the Product is not "healthy" because it contains unlawful levels of saturated fat.

21.   Plaintiffs would consider buying the Product again in future if it was advertised truthfully.

**KIND PLUS Peanut Butter Dark Chocolate + Protein**

22.   Defendant advertises the "KIND Plus Peanut Butter Dark Chocolate + Protein" Product by putting false and misleading claims on the label, stating or suggesting that the Product is "All Natural" and is an "all natural food." Defendant further falsely claims that the Product is "healthy" and "wholesome" and further makes claims suggesting that the product may be useful in maintaining healthy dietary

practices such as "Good Source of Fiber," "No Trans Fat," and "Low Sodium," "+ protein," "7g protein," and "low glycemic."



23.   The ingredients in the "KIND Plus Peanut Butter Dark Chocolate + Protein" include "Peanuts, almonds, honey, sugar, non GMO glucose, soy protein isolate, palm kernel oil, cocoa powder, peanut butter, chicory root fiber, tapioca starch, vanilla, whole milk, soy lecithin, [and] salt. " Additionally, the serving size for one bar is "40 [grams]" and the product contains "3.5 [grams of] saturated fat."

24.   Plaintiffs read and relied on each of the quoted statements above in paragraphs 22 through 33 that are found on the "KIND Plus Peanut Butter Dark Chocolate + Protein" packaging.

25.   Despite being advertised as "All Natural," the product contains the artificial and synthetic ingredients soy protein isolate, palm kernel oil, non GMO glucose and soy lecithin.  Moreover, the Product is not "healthy" because it contains unlawful levels of saturated fat.

26.   Plaintiffs would consider buying the Product again in future if it was advertised truthfully.

**KIND PLUS Dark Chocolate Cherry Cashew + Antioxidants**

27.   Defendant advertises the "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" Product by putting false and misleading claims on the label, stating or suggesting that the Product is "All Natural" and is an "all natural food." Defendant

1   further falsely claims that the Product is "healthy" and "wholesome" and further
2   makes claims suggesting that the product may be useful in maintaining healthy dietary
3   practices such as  "Good Source of Fiber," "No Trans Fat," and "Low Sodium," "+
4   antioxidants," and "50% DV antioxidants vitamins A, C, and E" and "low glycemic
5   index."



13   28.   The ingredients in the "KIND Plus Dark Chocolate Cherry Cashew +
14   Antioxidants" include "Mixed nuts (almonds, cashews, peanuts), dried fruit (cherries,
15   raisins, cranberries), sugar, honey, non GMO glucose, palm kernel oil, crisp rice,
16   cocoa powder, chicory root fiber, soy lecithin, vanilla whole milk, salt, [and]
17   sunflower oil. "   Additionally, the serving size for one bar is "40 [grams] and the
18   product contains "2.5 [grams of] saturated fat."

19   29.   Plaintiffs read and relied on each of the quoted statements above in
20   paragraphs 27 through 28 that are found on the "KIND Plus Dark Chocolate Cherry
21   Cashew + Antioxidants" packaging.

22   30.   Despite being advertised as "All Natural" the product contains the
23   artificial and synthetic ingredients palm kernel oil, non GMO glucose, and soy
24   lecithin.  Moreover, the Product is not "healthy" because it contains unlawful levels of
25   saturated fat.

26   31.   Plaintiffs would consider buying the Product again in future if it was
27   advertised truthfully.

28

## **ARTIFICIAL INGREDIENTS IN THE KIND PRODUCTS**

32.    Webster's New World Dictionary defines "natural" as "produced or existing in nature; not artificial or manufactured."[1] "All" is defined as "the whole extent or quantity of."[2] Thus, the combined use of "All Natural" on the labels of the KIND Products indicate to the average reasonable person that "the whole extent or quantity of" the ingredients contained in the KIND Products are "produced or existing in nature; not artificial or manufactured."

33.    Defendant made a far broader and more encompassing representation by labeling its KIND Products as "All Natural" as opposed to simply saying they were "natural." While federal regulators have established policies or regulations addressing the meaning of "natural" when used in food labeling, no regulations have specifically addressed the broader representation made by labeling the product as "All Natural," and the only policy to address "All Natural" labeling requires disclosure of any synthetic or artificial ingredients so as to indicate they are not natural. However, it is noteworthy that although the broader "All Natural" representation was made on KIND Products' labeling, the presence of the synthetic and artificial ingredients in them also violates the federal regulators' policy and regulations for the narrower "natural" representation.

34.    The United States Food and Drug Administration ("FDA") -- which has responsibility for regulating the labeling of the KIND Products at issue in this case as well as many other foods --has not promulgated a regulation defining the term "natural" or "All Natural." However, the agency has stated that it  "will maintain its policy regarding the use of 'natural,' as meaning that nothing artificial or synthetic (including all color additives regardless of source) has been included in, or has been added to, a food that would not normally be expected to be in the food." 58 Fed. Reg.

---

[1] Webster's New World Dictionary of the American Language, 2nd College Ed. (Simon & Schuster, 1984), "natural."
[2] *Id.*, "all."

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

2302, 2407. Although this definition is not a regulation, it is the "most definitive statement of the agency's view."[3]

35.    Courts and trade members have requested that the FDA provide a regulatory definition of "natural," however, the FDA has declined to provide a determination because the time required to conduct a public hearing "would take two to three years to complete," and the agency's resources are currently devoted to other, higher priorities."[4]

36.    Similar to the FDA, the United States Department of Agriculture ("USDA"), which regulates the labeling of meat and poultry, has also set limits on the use of the term "natural." The USDA's Food Safety and Inspection Service states that the term "natural" may be used on labeling of meat and poultry products so long as "(1) the product does not contain any artificial flavor or flavorings, color ingredient, or chemical preservative … or any other artificial or synthetic ingredient, and (2) the product and its ingredients are not more than minimally processed."[5]

37.    Under the USDA's guidelines, if a product is severely processed, the product can be labeled "All Natural" if the ingredient would not significantly change the character of the product to the point that it could no longer be considered a natural product. However, even in that case, "the natural claim must be qualified to clearly and conspicuously identify the ingredient, e.g., all natural or all natural ingredients except dextrose, modified food starch, etc."[6]

---

[3] *See* letter from Michael M. Landa, Acting Director, Center for Food Safety and Applied Nutrition to Judge Jerome B. Simandle dated September 16, 2010, filed in *Ries et al., v. Hornell Brewing Co., Inc.*, Case No. 10-1139 (N.D. Cal.), Docket No. 54.

[4] *See id.* (Letter to Judge Simandle).

[5] See the United States Department of Agriculture Food Standards and Labeling Policy book available at http://www.fsis.usda.gov/OPPDE/larc/Policies/Labeling_Policy_Book_082005.pdf (last visited April 17, 2015).

[6] *Id.*

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

38.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502 (21). *See also* 7 C.F.R. § 205.1, *et seq*. (defining, in USDA's National Organic Program regulations, a "nonsynthetic" as "a substance that is derived from mineral, plant, or animal matter and does not undergo a synthetic process as defined in section 6502(21) of the Act (7 U.S.C. § 6502(21)").

39.    The KIND products contain several synthetic ingredients described below.

**Soy Lecithin and Soy Protein Isolate**

40.    Each of the KIND Products contains the artificial ingredient soy lecithin. In addition, the "KIND Plus Peanut Butter Dark Chocolate + Protein" contains the artificial ingredient Soy Protein Isolate. Soy lecithin and soy protein isolate are used to increase protein content without increasing the carbohydrate and fat content. These soy products are all heavily processed to remove the natural bean flavor so that the finished "soy" product no longer tastes like soy. These soy products are further refined through unnatural processes using chemical additives. Soy lecithin and soy protein isolate are commonly refined through the use of a volatile synthetic solvent, hexane. Hexane is obtained from petroleum products. 40 C.F.R. § 99.2155. Moreover, the lecithin contained in soy lecithin is considered synthetic by federal regulators. *See* 721 C.F.R. § 205.605(b).

**Non GMO Glucose**

41.    Non GMO glucose is more commonly known as glucose syrup, dried glucose syrup, or corn syrup. *See* 21 C.F.R. 184.1865 Each of the KIND Products contain "non GMO glucose."  Glucose syrup is the liquid form of starch and can be derived from wheat, potato, or rice. Most companies, however, use cornstarch to produce glucose syrup. Plaintiffs aver and allege that the Non GMO glucose found in

the KIND products is derived from corn starch. To leach the starch from the corn kernel, the shelled corn is soaked for several hours in a dilute sulfur dioxide solution, which is a synthetic substance. Once the starch is leached, it is then further processed to produce the glucose syrup.

**Vegetable Glycerin**

42.   The "KIND Fruit & Nut Almond & Apricot" Product contains the artificial ingredient vegetable glycerin. It is used in some food products as a sweetener or a preservative. Vegetable glycerin is commonly produced commercially through the hydrolysis of fats and oils during the manufacturing of soap products, or synthesized from the hydrogenolysis of carbohydrates or from petrochemicals. Vegetable glycerin is a well-recognized synthetic product. 21 C.F.R § 172.866; 7 C.F.R. § 205.605(b); 7 C.F.R. § 205.603; 21 C.F.R. § 178.3500.

**Palm Kernel Oil**

43.   The "KIND Plus Peanut Butter Dark Chocolate + Protein" and the "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" Products both contain the artificial ingredient Palm Kernel Oil. This ingredient is mechanically extracted from the palm kernel nut most often through the use of synthetic solvents such as hexane.

**Natural Apricot Flavor**

44.   The "KIND Fruit & Nut Almond & Apricot" contains the ingredient "natural apricot flavor."  Natural flavors must be derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof." 21 C.F.R. § 101.22.  It is unknown at this time whether the processing used to derive the "natural apricot flavor" from the natural source renders the final ingredient so heavily processed that it can longer be considered to be a "natural" ingredient. Further discovery is, therefore, necessary with regard to that issue.

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

## THE KIND PRODUCTS ARE MISBRANDED AS "HEALTHY"

45.   California's counterpart to the FDCA, known as the Sherman Law, incorporates the FDCA's food and drug regulations. Cal. Health & Safety Code §§ 109925, 110110, 111550.

46.   On March 17, 2015, the FDA sent a "warning letter" to Defendant informing it that the KIND Products are misbranded under the FDCA.[7]

47.   Specifically, the KIND Products bear the labeling claims "Healthy and tasty, Convenient and wholesome" in conjunction with other labeling claims like "good source of fiber," "no trans fats," "very low sodium" [Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, and Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "low sodium" [Kind Plus Peanut Butter Dark Chocolate + Protein], "+ antioxidants" [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "50% DV antioxidants vitamins A, C and E" [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "+ protein" [Kind Plus Peanut Butter Dark Chocolate + Protein], and "7g protein" [Kind Plus Peanut Butter Dark Chocolate + Protein]."  However, none of the KIND products meet the requirements for use of the claim "healthy" that are set forth in 21 CFR 101.65(d)(2).

48.   In accordance with 21 CFR 101.65(d)(2), food products  may only use the term "healthy" as an implied nutrient content claim on the label or in the labeling of a food provided that the food, among other things, is "low saturated fat" as defined in 21 CFR 101.62(c)(2) (i.e., the food has a saturated fat content of 1 g or less per Reference Amount Customarily Consumed (RACC) and no more than 15 percent of the calories are from saturated fat). However, the KIND Products have more than 1 gram of saturated fat.

49.   Specifically, the "KIND Fruit & Nut Almond & Apricot" product contains 3.5 grams of saturated fat, the "KIND Fruit & Nut Almond & Coconut"

---

[7] See March 17, 2015 FDA Warning Letter to KIND, LLC, *available at* http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm440942.htm (last visited April 17, 2015).

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

product contains 5 grams of saturated fat, the "KIND Plus Peanut Butter Dark Chocolate + Protein" product contains 3.5 grams of saturated fat, and the "KIND Fruit & Nut Dark Chocolate Cherry Cashew + Antioxidants" contains 2.5 grams of saturated fat.

50.   Moreover, those amounts exceed the maximum of 15% of calories from saturated fat in the "low saturated fat" definition. Accordingly, the KIND Products do not meet the requirements for use of the nutrient content claim "healthy" on a food label and are misbranded pursuant to 21 CFR 101.65(d)(2) and California's Sherman Law.

**Additional FDCA Violations**

51.   Aside from being misbranded as healthy, the KIND Products are further misbranded under the FDCA.

52.   The "KIND Peanut Butter Dark Chocolate + Protein" and "KIND Dark Chocolate Cherry Cashew + Antioxidants" products bear the term "+" (plus) as part of the product name but the products do not comply with the requirements governing the use of that term. The term "+" read in conjunction with "7 g Protein" and "50% DV Antioxidant, vitamins A, C and E," meets the definition for a nutrient content claim because it characterizes the Products' level of vitamins and minerals, which are nutrients of the type required to be in nutrition labeling. *See* 21 CFR 101.13(b).

53.   The term "plus" is defined in 21 CFR 101.54(e). This term may be used on the label or in labeling of foods to describe the level of nutrients (such as vitamins and minerals) in the food, provided that:

(1)   The food contains at least 10 percent more of the Reference Daily Intake (RDI) or Daily Reference Value (DRV) for the nutrient per RACC consumed than an appropriate reference food,

(2)   Where the claim is based on nutrients that are added to the food, that the fortification is in accordance with the policy on fortification of foods in 21 CFR 104.20, and

(3)   The claim bears the required information for relative claims as described in 21 CFR 101.13(j)(2) and 101.54(e)(1)(iii).

54.   However, neither labels for the "KIND Peanut Butter Dark Chocolate + Protein" and "KIND Dark Chocolate Cherry Cashew + Antioxidants" state the identity of the reference food and the percentage (or fraction) that the nutrient is greater relative to the RDI or DRV declared in immediate proximity to the most prominent such claim. Accordingly, these products are misbranded within the meaning of section 403(r)(1)(A) of the Act because they bear the nutrient content claim "plus" but do not comply with the regulations governing the use of this claim.

55.   All four of the KIND Products are further misbranded within the meaning of 21 U.S.C. § 343(r)(2)(A)(v), because the labels include the nutrient content claim "Good Source of Fiber" without including the required statement disclosing that the food is not low in total fat in immediate proximity to the claim. Pursuant to 21 CFR 101.54(d), if a product label makes a claim with respect to the level of dietary fiber (e.g., that the product is a good source of fiber) and the food is not "low" in total fat as defined in 21 CFR 101.62(b)(2), then the label must disclose the level of total fat per serving.

56.   The KIND Products exceed the maximum of 3 grams of total fat per 40 gram in the "low fat" definition of RACC.  Therefore, the KIND Products are not "low" in total fat and Defendant is required to disclose that fact on its labels in immediate proximity to the claims that the KIND Products are a "good source of fiber."

57.   The   KIND   Products   are   also   misbranded   because   the   nutrition information is not disclosed in accordance with 21 C.F.R. § 101.9. Specifically, the labels bear a claim about fatty acids (i.e., "no trans fat") but fail to include the levels of monounsaturated fatty acids and polyunsaturated fatty acids in the nutrition information as required by §§ 21 CFR 101.9 (c)(2)(iii) and (iv). The "KIND Plus Peanut Butter Dark Chocolate + Protein" product label includes the nutrient content

claims: "+ protein" and "plus 7 g protein" on the principal display panel; however, the nutrition label fails to include the percent DV for protein as required when the label bears a nutrient content claim for protein as required by 21 C.F.R § 101.9(c)(7)(i).

58.    The "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" product ingredient list does not meet the requirements in 21 CFR § 101.4(b), which requires that the name of an ingredient shall be a specific name and not a collective (generic) name. This product lists the collective terms "mixed nuts," "dried fruits," and "vitamins" as multicomponent foods and declares the specific nuts, fruits, and vitamins as sub-ingredients. The regulations do not allow the collective listing of nuts, fruits, or vitamins.

59.    The "KIND Plus Peanut Butter Dark Chocolate + Protein" product ingredient list does not meet the requirements in 21 CFR 101.4(b)(2) because the label declares the standardized multicomponent food, peanut butter, but does not declare the sub-ingredients as required in 21 CFR 101.4(b)(2)(i). In accordance with 101.4(b)(2)(ii), if the ingredients of the standardized food are incorporated in the finished food ingredient list, then the name of the standardized ingredient must not be listed.

60.    The KIND Products' ingredient statements declare "non GMO glucose." This is not an appropriate common or usual name for glucose syrup or dried glucose syrup in accordance with 21 CFR 101.4 and 168.120 or 168.121.

**RELIANCE AND INJURY**

61.    All of Defendant's false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the ingredients of the KIND Products, the qualities and/or composition of the Products and the reason for which they are sold.

62.    Consumers frequently rely on food label representations and information in making purchase decisions. Here, Plaintiffs and other class members reasonably relied to their detriment on Defendant's misleading representations and omissions.

63.   Defendant's uniform claims in its marketing and promotional materials are intended to, and did, induce Plaintiffs and members of the Classes defined herein to rely upon those representations that Defendant's Products were "All Natural" and "Healthy."  These representations were a substantial factor in causing Plaintiffs and members of the Classes to purchase Defendant's Products.

64.   At the time members of the Classes purchased the Products, they were unaware of the fact that the Products contained synthetic ingredients and are misbranded as "healthy."

65.   Plaintiffs also sustained legally cognizable injury in the form of lost money as a result of Defendant's misbranding, which also was in the nature of an omission, i.e., Defendant's failure to adequately disclose the KIND Products' synthetic ingredients. Had Defendant labeled the KIND Products in conformance with applicable FDCA and state law food regulations, Plaintiffs would not have purchased them at all.

66.   Plaintiffs and members of the Classes have been injured in fact and have suffered out of pocket losses.  Plaintiffs and members of the Classes therefore seek a full refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## CLASS ACTION ALLEGATIONS

67.   Pursuant to Rules 23(a), (b)(3) and/or (b)(2) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and consumer classes initially defined as follows:

**The Nationwide Class**

All purchasers of KIND Products in the United States  labeled "KIND Fruit & Nut Almond & Apricot," "KIND Fruit & Nut Almond & Coconut," "KIND Plus Peanut Butter Dark Chocolate + Protein," "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" for personal or household use and not for resale, during the applicable statute of limitations period.

Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

**The California Sub-Class**

All purchasers of KIND Products in California and states with similar consumer protection laws labeled "KIND Fruit & Nut Almond & Apricot," "KIND Fruit & Nut Almond & Coconut," "KIND Plus Peanut Butter Dark Chocolate + Protein," "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" for personal or household use and not for resale, during the applicable statute of limitations period. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

68.   The proposed Classes are so numerous that individual joinder of all the members is impracticable.  Due to the nature of the trade and commerce involved, however, Plaintiffs believe the total number of Class members is at least in the hundreds of thousands and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

69.     Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole.  In particular, Defendant has failed to disclose the true nature of the Products being marketed as described herein.

70.     There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiffs and the Classes and these common questions of fact and law include, but are not limited to, the following:

    a.  Whether the claims discussed above are true, misleading, or reasonably likely to deceive;

    b.  Whether the KIND Products contain artificial or synthetic ingredients;

    c.  Whether the KIND Products are misbranded under the FDCA;

    d.  Whether Defendant's alleged conduct violates public policy;

    e.  Whether the alleged conduct constitutes violations of the laws asserted herein;

    f.  Whether Defendant engaged in false or misleading advertising;

    g.  Whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss;

    h.  Whether Plaintiffs and Class members are entitled to an award of punitive damages; and;

    i.  Whether Plaintiffs and Class members are entitled to declaratory and injunctive relief.

71.     Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and all members of the Classes have been similarly affected by Defendant's common course of conduct since they all relied on Defendant's representations concerning the KIND Products and purchased the Products based on those representations.

72.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes.  Plaintiffs have retained counsel with substantial experience in handling complex class action litigation in general and scientific claims, including for food products in particular.  Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

73.    Plaintiffs and the members of the Classes suffered, and will continue to suffer harm as a result of the Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy.  Individual joinder of all members of the Classes is impracticable.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

74.    Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FIRST CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

#### (By the Nationwide Class and the California Sub-Class)

75.    Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

76.    Plaintiffs bring this second cause of action individually and on behalf of the members of the Class against Defendant.

77.    Defendant, as a manufacture, marketer, distributor, or seller, expressly warranted that the KIND Products are "all natural" and "healthy."  Specifically, Defendant made the following express warranties in the quoted language below with respect to each of the KIND Products:

- "All Natural"
- "Natural Ingredients"
- "Natural foods"
- "Healthy"
- "Wholesome"

78.    Defendant breached each of the warranties in the above-quoted language because the KIND Products contain synthetic ingredients and are branded  as healthy even though the products contain unlawful levels of saturated fat.

79.    Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the KIND Products if the true facts had been known.

80.    Defendant breached its express warranty by selling Products that contain artificial ingredients and that are not healthy.

81.    Plaintiffs, on behalf of themselves and the class, seek actual damages for Defendant's breach of warranty.

**SECOND CAUSE OF ACTION**

**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**(By the Nationwide Class and the California Sub-Class (Cal. Civ. Code § 1792))**

82.   Plaintiffs and the Class members repeat and reallage each and every allegation above, as if set forth in full herein.

83.   Plaintiffs bring this second cause of action individually and on behalf of the members of the Class against Defendant.

84.   Defendant, as the designer, manufacturer, marketer, distributor, and seller impliedly warranted that the KIND Products were fit for their intended purpose in that the Products were all natural and healthy. Defendant did so with the intent to induce Plaintiffs and members of the Class to purchase the Products.

85.   Defendant breached its implied warranties in the contract for the sale of the KIND Products because the Products are not all natural or healthy.

86.   In reliance upon Defendant's skill and judgment and the implied warranties discussed above, Plaintiff and the Class members purchased the KIND Products.

87.   The KIND Products were not altered by Plaintiffs or the Class Members.

88.   Plaintiffs, on behalf of themselves and the class, seek actual damages for Defendant's breach of warranty.

**THIRD CAUSE OF ACTION**

**UNJUST ENRICHMENT**

**(By the Nationwide Class and the California Sub-Class)**

89.   Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

90.   Plaintiffs bring this fourth cause of action individually and on behalf of the members of the Class against Defendant.

91.   "The unjust enrichment claim can be made from common class wide proof." *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 239 (C.D. Cal.

2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common scheme.). "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements - the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines,* 245 F.R.D. 226,231 (E.D. Pa. 2007).

92.   Plaintiffs and the Class members conferred a benefit on Defendant by purchasing the KIND Products.

93.   Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the KIND Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the facts concerning the ingredients in the Products and caused Plaintiffs and the Class to lose money as a result thereof.

94.   Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the KIND Products if the true facts had been known. Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court. Additionally, Plaintiffs and the Class seek attorneys' fees and costs for their unjust enrichment claim.

## FOURTH CAUSE OF ACTION

## INTENTIONAL MISREPRESENTATION

### (By the Nationwide Class and the California Sub-Class)

95.    Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

96.    Plaintiffs bring this fifth cause of action individually and on behalf of the members of the Class against Defendant.

97.    Defendant represented to the public, including to Plaintiffs and the Class, that the KIND products were all natural and healthy.

98.    Defendant's misrepresentations were false and misleading.

99.    At the time Defendant made statements or representations regarding the nature and qualities of the KIND products, Defendant knew that the statements and representations were false and misleading.

100.   Defendant made the misrepresentations alleged herein with the intention of inducing and persuading Plaintiffs and the class to purchase the KIND Products.

101.   Defendant further withheld and omitted material information about the KIND Products with the intention of inducing and persuading Plaintiffs and the class to purchase the products.

102.   Plaintiffs and the class, by purchasing the KIND products, reasonably relied on Defendant's false and misleading statements and misrepresentations, and on the absence of the material information that Defendant omitted.

103.   As a direct and proximate result of Defendant's intentional misrepresentations and deceptive omissions, Plaintiffs and the class were induced to pay for worthless products.

104.   Plaintiffs and the Class were damaged through their purchase and use of the KIND Products.

105.   Plaintiffs' and the Class's reliance on Defendant's statements and representations of the nature and characteristics of the KIND Products was reasonable. As a result, Defendant is guilty of malice, oppression, and fraud, and Plaintiffs and the Class are therefore entitled to recover exemplary or punitive damages. Additionally, Plaintiffs and the Class seek attorneys' fees and costs as allowed by statute.

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

## FIFTH CAUSE OF ACTION

## NEGLIGENT MISREPRESENTATION

### (By the Nationwide Class and the California Sub-Class)

106. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

107. Plaintiffs bring this fifth cause of action individually and on behalf of the members of the Class against Defendant.

108. In marketing, advertising and promoting the KIND Products, Defendant carelessly and negligently made representations regarding the products that Defendant knew or should reasonably have known or reasonably foreseen misrepresented material facts and omitted to state material facts.

109. Defendant has a pecuniary interest in the marketing, advertising and promotion of the KIND Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including to Plaintiffs and members of the Class.

110. In its marketing, advertising and promoting of the KIND Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendant was in a superior position than Plaintiffs and the members of the Class to know the material facts.

111. In its marketing, advertising and promoting of the KIND Products and in making the careless, unreasonable and negligent misrepresentations and omissions alleged herein, including the representations made to Plaintiffs and the members of the Class, Defendant should have reasonably foreseen that Plaintiffs and members of the Class were likely to rely upon the misrepresentations.

112. Defendant's careless, unreasonable and negligent misrepresentations and omissions, as set forth in this complaint, are material in that they relate to matters to which reasonable persons, including Plaintiffs and the members of the Class, would

*McDonald et al. v. KIND, LLC*
CLASS ACTIONCOMPLAINT

1  attach importance in their purchasing decisions or conduct regarding the purchase of
2  KIND Products.

3      113.   Under the circumstances, Defendant had a duty to disclose material,
4  truthful information that they omitted in its careless, unreasonable and negligent
5  misrepresentations and omissions, as set forth in this complaint.

6      114.   As alleged in this complaint, Plaintiffs and the members of the Class
7  uniformly relied on Defendant's careless, unreasonable and negligent
8  misrepresentations and omissions, and under the circumstances described above such
9  reliance was reasonable and justifiable.

10     115.   As a result of Defendant's careless, unreasonable and negligent statements
11  and omissions as described herein, Plaintiffs and the members of the Class have been
12  injured and have suffered loss of money and property, and they are entitled to recover
13  damages from Defendant and attorneys' fees and costs as allowed by statute.

14                    **<u>SIXTH CAUSE OF ACTION</u>**

15  **VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349, *et seq.***

16                        **(By the Nationwide Class)**

17     116.   Plaintiffs and the Class members incorporate by reference and re-allege
18  each and every allegation set forth above as though fully set forth herein.

19     117.   Plaintiffs bring this sixth cause of action individually and on behalf of the
20  members of the Class against Defendant.

21     118.   By the acts and conduct alleged herein, Defendant committed unfair or
22  deceptive acts and practices in the state of New York by making the
23  misrepresentations described above.

24     119.   The foregoing acts and practices were directed at consumers.

25     120.   The foregoing deceptive acts and practices are misleading in a material
26  way because the fundamentally misrepresent the ingredients in the KIND Products.

27

28

121.   Plaintiffs and members of the Class were injured as a direct and proximate result of Defendant's violation of G.B.L. § 349 because they paid for the Product, which they would not have purchased had they known the true facts.

122.   Application of G.B.L. § 349 to all Class members throughout the country, regardless of their state or residence, is appropriate because, *inter alia*:

a)  Defendant's  nationwide sales operations are controlled, directed and originate from New York;

b)  Defendant's marketing operations, including the decisions regarding how to advertise, promote and sell the KIND Products, are made in New York, and internal marketing personnel and external marketing consultants all are based there;

c)  Defendant's sales force, customer service, and Internet website and advertising operations are controlled, directed and originate in New York;

d)  Defendant's principal place of business is in New York;

e)  All significant employees of Defendant are based in New York;

f)  The facts and circumstances of this case include such numerous contacts with the State of New York as to create a state interest in applying New York's consumer laws to Defendant, making application of New York law to the entire Class appropriate.

136.   Plaintiffs and the Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees and costs.

### SEVENTH CAUSE OF ACTION

### VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350, *et seq.*

### (By the Nationwide Class)

123.   Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

124.  Plaintiffs bring this seventh cause of action individually and on behalf of the members of the Class against Defendant.

125.  By the acts and conduct alleged herein, Defendant committed false advertising in the conduct of business, trade or commerce in the state of New York.

126. New York G.B.L. § 350-a defines "false advertising" as "advertising, including, labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." The foregoing acts and practices were directed at consumers.

127.  The foregoing false advertisements are misleading in a material way because they fundamentally misrepresent the nature of the ingredients in the KIND Products to induce consumers to purchase the products.

128.  Plaintiffs and members of the Class were injured as a direct and proximate result of Defendant's violation of G.B.L. § 350 because they paid for the Products, which they would not have purchased had they known the true facts.

129.  Application of G.B.L. § 350 to all Class members throughout the country, regardless of their state or residence, is appropriate because, *inter alia*:

g)  Defendant's  nationwide sales operations are controlled, directed and originate from New York;

h)  Defendant's marketing operations, including the decisions regarding how to advertise, promote and sell the KIND Products, are made in New York, and internal marketing personnel and external marketing consultants all are based there;

i)  Defendant's sales force, customer service, and Internet website and advertising operations are controlled, directed and originate in New York;

j)  Defendant's principal place of business is in New York;

k)  All significant employees of Defendant are based in New York;

l)  The facts and circumstances of this case include such numerous contacts with the State of New York as to create a state interest in applying New York's

consumer laws to Defendant, making application of New York law to the entire Class appropriate.

130.  Plaintiffs and the Class seek to enjoin the unlawful acts and practices described herein, to recover actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## EIGHTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT

### (By the California Sub-Class)

131.  Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

132.  Plaintiffs bring this eighth cause of action individually and on behalf of the members of the California Sub-Class against Defendant.

133.  This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiffs are consumers as defined by California Civil Code §1761(d).  The Products are goods within the meaning of the Act.

134.  Defendant violated and continues to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the KIND Products:

   (5)   Representing that [the Products have] … characteristics … uses [or] benefits … which it does not have … ***

   (7)   Representing that [the Products are] of a particular standard, quality or grade… if [they are] of another. ***

   (9)   Advertising a good… with intent not to sell it as advertised. ***

   (16)  Representing that [the Products have] been supplied in accordance with a previous representation when [it have] not.

135.  Defendant violated the Act by representing false or deceptive information in the labeling of the Products as described above, when they knew, or should have known, that the representations and advertisements were false or misleading.

136. Plaintiffs and other members of the Class reasonably relied upon the Defendant's representations as to the quality and attributes of the KIND Products.

137.  Plaintiffs and other members of the Class were deceived by Defendant's representations about the quality and attributes of the Products, including but not limited to the benefits and characteristics of the Products, taken as a whole, as described herein.  Plaintiffs and other Class members would not have purchased the Products had they known the Defendant's claims were untrue, and had they known the true nature of the Products.

138.  Plaintiffs and the Class seek an order of this Court awarding Plaintiffs and the Class prospective and retrospective injunctive relief, and attorneys' fees and costs as allowed by statute. Plaintiffs are not seeking damages or punitive damages at this time for their CLRA claim, but will amend their complaint 30 days after Defendant has received their CLRA letter to seek damages and punitive damages.

## NINTH CAUSE OF ACTION

### VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW

### (By the California Sub-Class)

139.  Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

140.  Plaintiffs bring this ninth cause of action individually and on behalf of the members of the California Sub-Class against Defendant.

141. Plaintiffs have standing to pursue this claim as Plaintiffs have suffered injury in fact as a result of Defendant's actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiffs purchased the KIND Products in reliance upon Defendant's marketing claims.

142. Defendant's business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq*. because Defendant advertises the Products Plaintiffs purchased in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendant to be untrue or misleading.

143. Defendant's wrongful business practices have caused injury to Plaintiffs and the Class.

144. Pursuant to section 17535 of the California Business and Professions Code, Plaintiff s as well as the California Sub-Class seek an order of this court enjoining Defendant from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the complaint.

145. Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of the Products which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## TENTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW

### (By the California Sub-Class)

146. Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

147. Plaintiffs bring this tenth cause of action individually and on behalf of the members of the California Sub-Class against Defendant.

148. California Business and Professional Code § 17200 prohibits any "unlawful, unfair or fraudulent business act or practice."

### ***Unlawful***

149. The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "unlawful" business acts and practices in that

Defendant's conduct violates the False Advertising Law and the Consumer Legal Remedies Act.

150. Defendant's conduct is further "unlawful" because it violates the FDCA and its implementing regulations in the following ways:

a. The KIND Products bear the labeling claims "Healthy and tasty, Convenient and wholesome" in conjunction with other labeling claims like "good source of fiber," "no trans fats," "very low sodium" [Kind Fruit & Nut Almond & Apricot, Kind Fruit & Nut Almond & Coconut, and Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "low sodium" [Kind Plus Peanut Butter Dark Chocolate + Protein], "+ antioxidants" [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "50% DV antioxidants vitamins A, C and E" [Kind Plus Dark Chocolate Cherry Cashew + Antioxidants], "+ protein" [Kind Plus Peanut Butter Dark Chocolate + Protein], and "7g protein" [Kind Plus Peanut Butter Dark Chocolate + Protein]." However, none of the KIND products meet the requirements for use of the claim "healthy" that are set forth in 21 CFR 101.65(d)(2). In accordance with 21 CFR 101.65(d)(2), food products may only use the term "healthy" as an implied nutrient content claim on the label or in the labeling of a food provided that the food, among other things, is "low saturated fat" as defined in 21 CFR 101.62(c)(2) (i.e., the food has a saturated fat content of 1 g or less per Reference Amount Customarily Consumed (RACC) and no more than 15 percent of the calories are from saturated fat). However, the KIND Products have more than 1 gram of saturated fat.

b. The "KIND Peanut Butter Dark Chocolate + Protein" and "KIND Dark Chocolate Cherry Cashew + Antioxidants" products bear the term "+" (plus) as part of the product name but the products do not comply with the requirements governing the use of that term. The term "+" read in conjunction with "7 g

Protein" and "50% DV Antioxidant, vitamins A, C and E," meets the definition for a nutrient content claim because it characterizes the Products' level of vitamins and minerals, which are nutrients of the type required to be in nutrition labeling. *See* 21 CFR 101.13(b).

c.     The term "plus" is defined in 21 CFR 101.54(e). This term may be used on the label or in labeling of foods to describe the level of nutrients (such as vitamins and minerals) in the food, provided that:

> (1)   the food contains at least 10 percent more of the Reference Daily Intake (RDI) or Daily Reference Value (DRV) for the nutrient per RACC consumed than an appropriate reference food,

> (2)   where the claim is based on nutrients that are added to the food, that the fortification is in accordance with the policy on fortification of foods in 21 CFR 104.20, and

> (3)   the claim bears the required information for relative claims as described in 21 CFR 101.13(j)(2) and 101.54(e)(1)(iii).

However, neither labels for the "KIND Peanut Butter Dark Chocolate + Protein" and "KIND Dark Chocolate Cherry Cashew + Antioxidants" state the identity of the reference food and the percentage (or fraction) that the nutrient is greater relative to the RDI or DRV declared in immediate proximity to the most prominent such claim. Accordingly, these products are misbranded within the meaning of section 403(r)(1)(A) of the Act because they bear the nutrient content claim "plus" but do not comply with the regulations governing the use of this claim. All four of the KIND Products are further misbranded within the meaning of 21 U.S.C. § 343(r)(2)(A)(v), because the labels include the nutrient content claim "Good Source of Fiber" without including the required statement disclosing that the food is not low in total fat in immediate proximity to the claim. Pursuant to 21 CFR 101.54(d), if a product label makes a claim with

respect to the level of dietary fiber (e.g., that the product is a good source of fiber) and the food is not "low" in total fat as defined in 21 CFR 101.62(b)(2), then the label must disclose the level of total fat per serving.

d.      The KIND Products exceed the maximum of 3 grams of total fat per 40 gram in the "low fat" definition of RACC.  Therefore, the KIND Products are not "low" in total fat and Defendant is required to disclose that fact on its labels in immediate proximity to the claims that the KIND Products are a "good source of fiber."

e.      The KIND Products are also misbranded because the nutrition information is not disclosed in accordance with 21 C.F.R. § 101.9. Specifically, the labels bear a claim about fatty acids (i.e., "no trans fat") but fail to include the levels of monounsaturated fatty acids and polyunsaturated fatty acids in the nutrition information as required by §§ 21 CFR 101.9 (c)(2)(iii) and (iv). The "KIND Plus Peanut Butter Dark Chocolate + Protein" product label includes the nutrient content claims: "+ protein" and "plus 7 g protein" on the principal display panel; however, the nutrition label fails to include the percent DV for protein as required when the label bears a nutrient content claim for protein as required by 21 C.F.R § 101.9(c)(7)(i).

The "KIND Plus Dark Chocolate Cherry Cashew + Antioxidants" product ingredient list does not meet the requirements in 21 CFR § 101.4(b), which requires that the name of an ingredient shall be a specific name and not a collective (generic) name. This product lists the collective terms "mixed nuts," "dried fruits," and "vitamins" as multicomponent foods and declares the specific nuts, fruits, and vitamins as sub-ingredients. The regulations do not allow the collective listing of nuts, fruits, or vitamins.

f.      The "KIND Plus Peanut Butter Dark Chocolate + Protein" product ingredient list does not meet the requirements in 21 CFR 101.4(b)(2) because

the label declares the standardized multicomponent food, peanut butter, but does not declare the sub-ingredients as required in 21 CFR 101.4(b)(2)(i). In accordance with 101.4(b)(2)(ii), if the ingredients of the standardized food are incorporated in the finished food ingredient list, then the name of the standardized ingredient must not be listed.

g.     The KIND Products' ingredient statements declare "non GMO glucose." This is not an appropriate common or usual name for glucose syrup or dried glucose syrup in accordance with 21 CFR 101.4 and 168.120 or 168.121.

151. Defendant's conduct is further "unlawful" because it violates the California Sherman Food, Drug, and Cosmetic Law, see Cal. Health & Safety Code § 109875-111900, which incorporates the provisions of the FDCA. See id. §§ 110110-110115.

72.  Defendant profited from its sales of the falsely, deceptively, or unlawfully advertised Product to unwary consumers.

***Unfair ***

152.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein also constitute "unfair" business acts and practices under the UCL in that Defendant's conduct is immoral, unscrupulous, and offends public policy by seeking to profit from male vulnerability to false or deceptive virility or aphrodisiac claims. Further, the gravity of Defendant's conduct outweighs any conceivable benefit of such conduct.

***Fraudulent ***

153.  The acts, omissions, misrepresentations, practices, and non-disclosures of Defendant as alleged herein constitute "fraudulent" business acts and practices under the UCL in that Defendant's claims are false, misleading, and have a tendency to deceive the Class and the general public, as detailed herein.

154. Defendant profited from its sales of the fraudulently, falsely and deceptively advertised Product to unwary consumers.

155.  In accordance with Bus. & Prof. Code § 17203, Plaintiffs seek an order enjoining Defendant from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices, and to commence a corrective advertising campaign.

156.  Plaintiffs further seeks an order for the disgorgement and restitution of all profit earned from the sale of the Defendant's Products, which were acquired through acts of unlawful, unfair, and/or fraudulent competition by Defendant. Plaintiffs also seek attorneys' fees and costs as allowed by statute.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves, all others similarly situated and the general public, pray for judgment against Defendant as to each and every cause of action, including:

A.    An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of class notice;

B.    An order appointing Plaintiffs as class representatives and the Law Offices of Ronald A. Marron as Class Counsel.

C.    An order awarding Plaintiffs and the proposed Class members damages, and punitive damages in the amount to be determined at trial;

D.    An order awarding restitution and disgorgement of Defendant's revenues from the Products to Plaintiffs and the proposed Class members;

E.    An order awarding attorneys' fees and costs to Plaintiffs;

F.    An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

G.    An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Products, including a recall of the falsely and deceptively labeled Products.

H.    An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  April 17, 2015                  /s/ Ronald A. Marron
                                        RONALD A. MARRON

                                        **LAW OFFICES OF RONALD A. MARRON**
                                        *ron@consumersadvocates.com*
                                        651 Arroyo Drive
                                        San Diego, California 92103
                                        Telephone: (619) 696-9006
                                        Facsimile: (619) 564-6665

                                        ***Attorney for Plaintiffs and the Proposed Class***

---

36

*McDonald et al. v. KIND, LLC*
CLASS ACTION COMPLAINT